IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-0170-WJM-NYW

JOEL SCOTT, and
CARON SCOTT,

    Plaintiffs,

v.

THE BUCKNER COMPANY,

    Defendant.

---

**ORDER DENYING AS MOOT DEFENDANT'S FIRST MOTION TO DISMISS
AND DENYING DEFENDANT'S SECOND MOTION TO DISMISS**

---

In this action, Plaintiffs Joel Scott and Caron Scott ("Plaintiffs") bring various claims against Defendant The Buckner Company, Inc. ("Defendant"). (ECF No. 24.) Before the Court are Defendant's (1) Motion to Dismiss for Improper Venue ("First Motion to Dismiss"; ECF No. 14); and (2) Reasserted Motion to Dismiss for Improper Venue in Response to Plaintiffs' First Amended Complaint ("Second Motion to Dismiss"; ECF No. 39). For the reasons set forth below, the Court denies as moot the First Motion to Dismiss and denies the Second Motion to Dismiss.

## I. BACKGROUND

Plaintiffs are residents of Colorado. (ECF No. 24 at 1, ¶ 1.) Defendant is a Utah corporation in the business of procuring insurance, and whose principal place of business is in Salt Lake City, Utah. (ECF Nos. 24 at 1, ¶ 2 & 14 at 2.) Silverhawk Enterprises, Inc. ("Silverhawk"), is a Utah corporation that builds custom homes, and

whose principal place of business is located in Utah. (ECF Nos. 24 at 2–3, ¶¶ 6, 9 & 37 at 2.)

In 2012, Plaintiffs hired Silverhawk to build an approximately $800,000 home in Salida, Colorado (the "Home"). (ECF No. 24 at 2, ¶ 6.) Before construction commenced, Silverhawk contacted Defendant's employee, Beat Koszinowski ("Koszinowski"), to obtain liability insurance for the project. (*Id*. at 3, ¶ 9.) Koszinowski had been Silverhawk's insurance agent for several years. (*Id*.)

Since the Home was to be built outside of Utah, the state where Silverhawk is based and most of its construction projects occur, Silverhawk's principal, Thomas Hasleton ("Hasleton"), allegedly "approached Koszinowski for the express purpose of ensuring that the work on the [Home] would be covered by liability insurance." (*Id*.) In doing so, Hasleton allegedly described the project to Koszinowski, advised him that the Home would be built in Colorado, and expressly directed him to acquire full coverage for the project. (*Id*.) Koszinowski then procured for Silverhawk liability insurance policies from Mid-Continent Casualty Company ("Mid-Continent"). (*Id*. at 2, ¶¶ 7–8.)

Sometime after Koszinowski had procured the initial insurance policy, Silverhawk's lender wanted proof that the project was insured. (*Id*. at 3, ¶ 10.) Thus, the lender requested that Silverhawk have Defendant complete two Evidence of Property Insurance ("EOI") forms with respect to the coverage Defendant had procured for Silverhawk for the project. (*Id*.) In the first EOI, Defendant stated that Silverhawk was covered by an "Installation/Builders Risk/Course of Construction Coverage" policy issued by Great American Insurance Group (who is apparently Mid-Continent's parent

2

company) for a period of one-year starting on November 3, 2011.  (*Id*.; *see also* ECF No. 38-1 at 1.)  In addition, the first EOI stated that the "project location" was in Salida, Colorado.  (ECF No. 24 at 3, ¶ 10; *see also* ECF No. 38-1 at 1.)

In the second EOI, Defendant stated that Silverhawk was covered by a policy issued by Great American Insurance Group for "[b]lanket builders risk/course of construction of residential 1-6 family dwellings within the States of Utah, Wyoming and Colorado."  (ECF No. 24 at 3, ¶ 10; *see also* ECF No. 38-1 at 2.)  Additionally, the second EOI stated that the property was located in Salida, Colorado.  (ECF No. 24 at 3, ¶ 10; *see also* ECF No. 38-1 at 2.)  Plaintiffs claim that Defendant also "issued Certificates of Liability Insurance for each of the years that the [H]ome was being constructed, indicating that Silverhawk was insured under the Mid-Continent Policies for work on the [H]ome."  (ECF No. 24 at 3, ¶ 10.)

According to Plaintiffs, as a result of Defendant's alleged representations to Silverhawk that the project was covered by liability insurance, Silverhawk in turn informed Plaintiffs that the project was insured.  (*Id*. at 3–4, ¶¶ 9, 11.)  Plaintiffs allege that they "relied on the existence of liability insurance in deciding to move forward with the construction of their home by Silverhawk."  (*Id*. at 4, ¶ 11.)

Construction began near the end of 2012 and the Home was substantially completed by the end of 2014.  (*Id*. at 2, 4, ¶¶ 6, 12.)  After the Plaintiffs moved into the Home, they discovered several defects in the property that they believed were caused by Silverhawk and its subcontractors.  (*Id*. at 4, ¶ 12; *see also* ECF No. 37 at 3.)  Plaintiffs claim that they spent approximately $260,000 correcting the defects and

repairing the damage.  (*Id*.)

On September 28, 2015, Plaintiffs brought action against Silverhawk, Hasleton, and others in the Chaffee County District Court in Salida, Colorado (the "state action"). (*Id*. at 4, ¶ 14.)  In that lawsuit, Plaintiffs sought reimbursement for the expenses they incurred in correcting the construction defects.  (*Id*.)  After Silverhawk informed Koszinowski of the claims against it, Defendant reported the state action to Mid-Continent.  (*Id*. at 4, ¶ 15.)  Mid-Continent, however, denied coverage to Silverhawk for the claims made against it by the Plaintiffs.  (*Id*.)  In particular, Mid-Continent denied Silverhawk's "request for a defense and indemnity because each of its Policies [with Mid-Continent] contained endorsements that eliminated coverage for liability arising out of Silverhawk's ongoing or completed construction operations performed in the State of Colorado."  (*Id*. at 4–5, ¶ 15.)  Thus, Plaintiffs allege that Defendant "acquired no liability coverage at all for Silverhawk for the construction of the [Home]."  (*Id*. at 5, ¶ 15.)

After being denied insurance coverage, Silverhawk and Hasleton expended approximately $90,000 over the next three years defending themselves in the state action.  (*Id*. at 5, ¶ 16; *see also* ECF No. 37 at 4.)  In August 2018, the parties to the state action reached a settlement, whereby Silverhawk and Hasleton agreed to pay $97,500 as partial reimbursement for the expenses Plaintiffs incurred to correct the construction defects.  (*Id*.)  "Silverhawk and Hasleton subsequently assigned their rights and claims against [Defendant] under Utah law to the [Plaintiffs]."  (ECF No. 37 at 4; *see also* ECF No. 24 at 5, ¶ 20.)  This lawsuit followed.  (ECF No. 1.)

4

## II.  PROCEDURAL HISTORY

On January 18, 2019, Plaintiffs filed this action against Defendant.  (*Id.*)  In the Amended Complaint, Plaintiffs assert four claims against Defendant.  Three of these claims—negligent failure to procure, breach of contract to procure insurance, and negligent misrepresentation—were assigned to Plaintiffs by Silverhawk and Hasleton and are brought under Utah law.  (ECF No. 37 at 4; *see also* ECF No. 24 at 7–9.)  While the fourth and final claim is also one for negligent misrepresentation, this claim is asserted against Defendant under Colorado law.  (ECF No. 37 at 4; *see also* ECF No. 24 at 6.)

On March 1, 2019, Defendant filed its First Motion to Dismiss.  (ECF No. 14.)  In that motion, Defendant asks the Court to dismiss Plaintiffs' Complaint "and/or change venue to the U.S. District Court for the District of Utah pursuant to Fed. R. Civ. P. 12(b)(3)."  (*Id.* at 1.)  On March 12, 2019, Plaintiffs filed an Amended Complaint while Defendant's First Motion to Dismiss was still pending before the Court.  (ECF No. 24.)  On March 22, 2019, Plaintiffs filed a Response to the First Motion to Dismiss.  (ECF No. 38.)

On March 26, 2019, Defendant filed its Second Motion to Dismiss.  (ECF No. 39.)  In that Motion, Defendant does not raise any new arguments but instead "reasserts its previously filed [First] Motion to Dismiss" since the "Amended Complaint does not contain new allegations altering the basis for or the arguments made in support of Defendant's [First] Motion to Dismiss."  (*Id.* at 1.)  Indeed, the new allegations in the Amended Complaint only pertain to the amount in controversy in the

case. (*Compare* ECF No. 24 *with* ECF No. 1.) On April 16, 2019, Plaintiffs filed a Response to the Second Motion to Dismiss, likewise asking the Court to "incorporate by reference in its entirety" their previously filed Response (ECF No. 38). (ECF No. 47.)

## III. ANALYSIS

### A. First Motion to Dismiss is Moot

It is well-established that an "amended complaint supersedes the original complaint and renders the original complaint of no legal effect." *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)); *see also Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991). "Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot." *Brumfiel v. U.S. Bank*, 2013 WL 12246738, at *1 (D. Colo. May 16, 2013) (internal citations omitted); *see also Mohammed v. Holder*, 2009 WL 529549, at *3 (D. Colo. Mar. 2, 2009) (denying motion to dismiss as moot because plaintiff's amended complaint superseded his original complaint to which the motion to dismiss was directed); *Howeth v. Aramark Corp.*, 2011 WL 1428087, at *2 (D. Utah Apr. 13, 2011) (motion to dismiss is moot when complaint has been amended).

Because the Complaint (ECF No. 1) has been superseded by Plaintiffs' Amended Complaint (ECF No. 24), Defendant's First Motion to Dismiss (ECF No. 14) must be denied as moot. Nevertheless, because the Second Motion to Dismiss wholly incorporates the First Motion to Dismiss, the Court will address the arguments made in

6

the earlier motion. Similarly, because Plaintiffs' Response to the Second Motion to Dismiss wholly incorporates Plaintiffs' previous Response, the Court will address the arguments made in the earlier filing.

**B.     Plaintiffs Have Made *Prima Facie* Showing that Venue is Proper in Colorado**

　　　　1.     The Applicable Venue Inquiry

"Once venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district." *Hanson v. Bosley & Bratch, Inc.*, 2018 WL 4491424, at *3 (D. Colo. Sept. 18, 2018). "At the motion to dismiss stage, a plaintiff must present only a prima facie showing of venue." *Cox v. Sullivan*, 2014 WL 4352088, at *2 (N.D. Okla. Sept. 2, 2014) (internal quotation marks omitted).

"[I]n reviewing a defendant's Rule 12(b)(3) motion to dismiss for improper venue, the Court may examine facts outside of the complaint and must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Aspen Corps. v. Gorman*, 2019 WL 1281211, at *5 (D. Colo. Mar. 20, 2019) (citing *Hancock v. AT&T Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012)). "Specifically, the Court must accept the well-pleaded allegations of the complaint as true to the extent that they are uncontested by the defendant's affidavits." *Karl W. Schmidt & Assocs., Inc. v. Action Envtl. Sols., LLC*, 2014 WL 6617095, at *2 (D. Colo. Nov. 21, 2014) (citing *Hancock*, 701 F.3d at 1260–61). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id*. (internal quotation marks omitted).

"Of course, determination of proper venue does not require the court to choose

the best venue or determine which forum has the most, or most significant, contacts with plaintiff's claims." *Sanchez v. Miller*, 2016 WL 675816, at *3 (D. Colo. Feb. 19, 2016). "Moreover, 'unless the balance is strongly in favor of the [defendant], the plaintiff's choice of forum should rarely be disturbed.'" *Gorman*, 2019 WL 1281211, at *4 (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). "Nevertheless, courts will 'accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Sanchez*, 2016 WL 675816, at *3 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010)).

The federal venue statute provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides . . .;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred [the '**Events or Omissions Inquiry**'], or a substantial part of property that is the subject of the action is situated [the '**Property Inquiry**']; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Plaintiffs assert that venue in the District of Colorado is proper not only under § 1391(b)(1), but also under the separate Events or Omissions and Property Inquiries of § 1391(b)(2). (*See* ECF No. 38.)

After a careful review of the pleadings and applicable case law, the Court finds that venue is proper in this District under the Property Inquiry, and that it need not consider whether venue is also appropriate under § 1391(b)(1) or the Events or

8

Omissions Inquiry of § 1391(b)(2).  *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) ("When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper"); *see also ConocoPhillips Co. v. Jump Oil Co.*, 948 F. Supp. 2d 1272, 1282 (N.D. Okla. 2013) (treating "§ 1391(b)(1) and § 1391(b)(2) as alternative, rather than hierarchical, venue provisions"); *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1196 (D. Colo. 1999) (concluding "that § 1391(b)(1), (2) provide alternative grounds for venue").

The Court notes that there is limited case law regarding the Property Inquiry in the Tenth Circuit.  In fact, the Court has only been able to locate three cases in the Circuit where the plaintiff alleged that venue was proper under the Property Inquiry. *See Mosier v. Farren*, 731 F. App'x 808, 811 (10th Cir. 2018); *DP Precise, LLC v. Phoenix Ins. Co.*, 2013 WL 2378561, at *2 (D. Colo. May 30, 2013); *In re $323,647.60 in Funds Belonging to Cal. Valley Miwok Tribe*, 2019 WL 693248, at *3 (D.N.M. Feb. 19, 2019).  Unfortunately, none of these cases provide insight on how the Property Inquiry should be properly analyzed.  *See id*.

The Court recognizes that in *Bartile Roofs*, the Tenth Circuit introduced a "two-part analysis" courts should follow when "reviewing challenges to venue under § 1391[(b)](2)." *Id*.  The Court acknowledges that district courts have applied the *Bartile Roofs* two-part analysis when reviewing venue challenges under the Events or Omissions Inquiry of § 1391(b)(2).  *See, e.g.*, *Cox*, 2014 WL 4352088, at *2; *Kunneman Props. LLC v. Marathon Oil Co.*, 2018 WL 337752, at *2 (N.D. Okla. Jan. 9, 2018);

*Goellner-Grant v. JLG Indus., Inc.*, 2019 WL 568580, at *2 (D. Kan. Feb. 12, 2019); *Frickey v. Thompson*, 136 F. Supp. 3d 1300, 1312 (D. Kan. 2015). Nonetheless, the Court concludes that it need not apply the *Bartile Roofs* two-part analysis here, given that both in that case, as well as in subsequent lower court decisions, only the Events or Omissions prong of § 1391(b)(2) was at issue. Thus the *Bartile Roofs* line of cases is inapposite to the Court's inquiry here, given that the Court will be considering only the Property Inquiry prong of § 1391(b)(2).

The Court finds support for its conclusion based on the fact that the Tenth Circuit only addressed the Events or Omissions Inquiry in *Bartile Roofs*. 618 F.3d at 1165–67. Indeed, in reproducing the text of § 1391(b)(2) in the opinion, the Tenth Circuit omitted entirely the Property Inquiry clause. *Id*. at 1165. Moreover, a review of the *Bartile Roofs* two-part analysis makes clear that it only applies to the Events or Omissions Inquiry. Under the analysis, courts first "examine the nature of the plaintiff's claims and the *acts or omissions* underlying those claims." *Id*. at 1166 (emphasis added). Next, courts "determine whether substantial *events* material to those claims occurred in the forum district." *Id.* (internal quotation marks omitted) (emphasis added). The Tenth Circuit noted that the "substantiality requirement is satisfied upon a showing of *acts or omissions* that have a close nexus to the alleged claims." *Id.* (internal quotation marks omitted) (emphasis added). Thus, the Court is convinced that the *Bartile Roofs* two-part analysis is only applicable to the Events or Omissions Inquiry, and not to the Property Inquiry, of § 1391(b)(2).

2. <u>Plaintiffs Have Satisfied the Property Inquiry</u>

Defendant argues in its Second Motion to Dismiss that "the District of Colorado is the improper venue for this action because Defendant does not reside in Colorado and none of the alleged *events or omissions* giving rise to the claim occurred in Colorado." (ECF No. 44 at 1 (emphasis added); *see* ECF No. 14.) In other words, Defendant claims that venue is improper in this District because § 1391(b)(1) and § 1391(b)(2)'s Events or Omissions Inquiry cannot be satisfied. (*See* ECF No. 14.) Thus, Defendant's arguments regarding § 1391(b)(2) in the Second Motion to Dismiss focus solely on the Events or Omissions Inquiry. (*Id*. at 3–5.) Indeed, Defendant does not once address in its Motion the Property Inquiry prong of § 1391(b)(2). (*See* ECF No. 14.)

Because Defendant challenged Plaintiffs' choice of venue, Plaintiffs have the burden to establish that venue is proper in Colorado. *See Hanson*, 2018 WL 4491424, at *3. Since Defendant has challenged venue through a motion to dismiss, Plaintiffs need only present a *prima facie* showing that venue is proper. *Cox*, 2014 WL 4352088, at * 2.

In regard to the Property Inquiry, Plaintiffs make the following argument:

> Venue is proper under subsection (b)(2) in a district in which "a substantial part of property that is the subject of the action is situated[.]" Here, the Scotts' property in Salida, Colorado[,] is at the center of each of the claims that are alleged against Buckner. It is the injury to that property that provides the foundation for all damages asserted by the Scotts—for their own as well as their assigned claims. Had no injury to the Scotts' property occurred, this lawsuit would not exist.
>
> Specifically, the Scotts allege that the property would not have been injured but-for Buckner's misrepresentations that

11

>Silverhawk had insurance coverage in place in the event
>something went wrong during construction. If the property
>had not been injured, then the Scotts would not have
>incurred losses correcting or repairing those injuries and
>they would not have initiated the Chaffee County lawsuit to
>seek recompense. Thus, had the Scotts' property not been
>injured, Silverhawk . . . and Thomas Hasleton would not
>have incurred losses defending themselves against and
>settling the Chafee [*sic*] County Suit. Venue is proper in this
>district pursuant to 28 U.S.C. § 1391(b)(2) as a result.

(*Id*. at 5–6 (internal citations omitted).) In its Reply, Defendant does not address the Property Inquiry at all, let alone Plaintiffs' arguments regarding the Inquiry. (*See* ECF No. 44.)

The record amply supports a finding that a substantial part of the real property that is the subject of this action is situated in the judicial District of Colorado. The Home located in Colorado is at the center of each of Plaintiffs' causes of action. For instance, Plaintiffs assert that they detrimentally relied on Defendant's false representations to Silverhawk that the Colorado project was fully covered with liability insurance. (ECF No. 24 at 6.) Plaintiffs claim that based on these false representations, they allowed Silverhawk to construct the Home, which in turn led to the damage of their property. (*Id*.) The damages Plaintiffs seek for the claim is "the difference between the amount expended to correct or repair the damage to the [H]ome and the amount paid pursuant to the settlement of the [state] Lawsuit." (*Id*.) Plaintiffs' other three claims could be similarly analyzed.

Accordingly, the Court finds that all of Plaintiffs' claims are intrinsically linked to the Home, and thus to the real property which no one can dispute is located in the judicial District of Colorado. Therefore, the record before the Court supports a finding

that there is substantial property located within the judicial District of Colorado that is the subject of this action. The Court notes that Defendant had an opportunity to counter the arguments squarely raised in Plaintiffs' Response regarding the Property Inquiry or argue that the Property Inquiry does not apply under the circumstances. Defendant, however, entirely failed to address the Property Inquiry in its Reply (or in its Second Motion to Dismiss, which was filed after Plaintiffs' Response). (*See* ECF Nos. 39 & 44.)

For all these reasons the Court will deny Defendant's Second Motion to Dismiss.[1]

## IV. CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

1. Defendant's First Motion to Dismiss (ECF No. 14) is DENIED AS MOOT; and

2. Defendant's Second Motion to Dismiss (ECF No. 39) is DENIED.

---

[1] Since the Court has concluded that Plaintiffs have made a *prima facie* showing that venue is proper in Colorado under the Property Inquiry, the Court need not address the parties' arguments regarding the Events or Omissions Inquiry. Nevertheless, the Court notes that a review of the pleadings and applicable case law indicates that venue would likewise be proper under the Events or Omissions Inquiry. *See Bartile Roofs*, 618 F.3d at 1165–67 ("Courts have held that the alleged damages or loss under an insurance policy may constitute a substantial event for purposes of the venue analysis") (citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 (1st Cir. 2001) ("[I]n a suit against an insurance company to recover for losses . . . , the jurisdiction where that loss occurred is substantial for venue purposes")). Considering the entire sequence of events giving rise to this lawsuit, it appears evident that events occurring in Colorado did indeed play a substantial role in Plaintiffs' claims. *See Bartile Roofs*, 618 F.3d at 1167.

Dated this 16th day of May, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge