# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Circuit Judge Timothy M. Tymkovich

Civil Action No. 1:19-cv-00170-TMT-KAS

Joel Scott and Caron Scott,

      Plaintiff,

v.

The Buckner Company,

      Defendant.

---

### Memorandum Opinion and Order Denying Plaintiffs' Motion for Reconsideration Under Federal Rule of Civil Procedure 59(e)

---

Following the Court's order, Dkt. 99, which granted the Defendant's Motion for Summary Judgment, Dkt. 66, and granted in part and denied in part the Defendant's Motion to Strike, Dkt. 69, the Court entered final judgment for the Defendants and directed the clerk to close the case, Dkt. 100. Subsequently, through counsel, Plaintiffs Joel Scott and Caron Scott filed a "Motion for Reconsideration"—invoking Federal Rule of Civil Procedure 59(e). Dkt. 101. The Scotts argue that the Court's summary judgment ruling failed to properly consider certain material facts and legal principles, resulting in manifest injustice. The Defendants have responded, Dkt. 108, and the Scotts

have submitted a reply, Dkt. 111.   The motion is therefore now ripe for adjudication.

## BACKGROUND[1]

### A. Summary Judgment

To summarize briefly, this case stems from efforts to recover insurance proceeds related to construction defects at the Plaintiffs' home caused by their general contractor, Silverhawk Enterprises, Inc. ("Silverhawk") and/or Silverhawk's subcontractors.   In their lawsuit against Silverhawk, the Scotts alleged that Silverhawk's construction of their home caused significant damage.   But following an inspection that revealed significant defects in the Exterior Insulation and Finish System ("EIFS") of the plaintiffs' home, Mid-Continent, the insurer, disclaimed coverage under a commercial general liability (CGL) policy Buckner procured for Silverhawk.   In denying coverage, Mid-Continent cited four policy exclusions.   The Scotts therefore sought to recover damages from Buckner for failing to procure adequate insurance for Silverhawk.   The Scotts' theory of the case rested on Silverhawk's belief, allegedly based on Buckner's representations, that adequate liability coverage was in place for the project.

---

[1] The Court discussed the background, procedural history, and summary judgment evidentiary record in greater detail in its summary judgment order.   *See generally* Order at 1–9; *Scott v. Buckner Co.*, No. 1:19-CV-00170-TMT-KAS, 2024 WL 1911226, at *1–4 (D. Colo. May 1, 2024).

The Scotts sued Buckner, asserting three claims assigned to them by Silverhawk and one direct claim they brought themselves: (1) breach of a contract to procure insurance, (2) negligent failure to procure insurance, (3) negligent misrepresentation (assigned), and (4) negligent misrepresentation (direct).  The Court granted Buckner's motion for summary judgment on all claims, concluding that there was insufficient evidence to create a genuine dispute of material fact on the material elements of the Scotts' theories of liability.  Following that decision on the merits, the Court entered final judgment.

### B. Post Judgment

The Scotts now seek reconsideration under Federal Rule of Civil Procedure 59(e), advancing two arguments that revolve around one procedural contention: the Scotts contend that the Court determined sua sponte issues related to policy exclusions.  They argue that doing so deprived them of notice and prevented them from fully briefing the issue, which prejudiced their case.  *See* Motion at 5–8.  The Scotts' procedural contention that they lacked notice underpins their substantive claim that certain damages were wrongly excluded, and their misrepresentation claims were unaffected by the policy exclusions.  This contention also relies, moreover, on the Scotts' belief that the Court's determinations of the legal effect of the EIFS and subcontractor exclusion sustained the Court's final decision on the merits on "*each* of the

claims." Motion at 5 (emphasis added). *See id.* at 5–6 (stating that the "Policy exclusion determinations" were "central to *all* of the Court's rulings.") (emphasis added).

Reasoning that the Court's final decision on the merits of "*each* of the claims" turned on the Court's determinations of the legal effect of the EIFS and subcontractor exclusions, the Scotts contend they lacked proper notice that they needed to demonstrate why these exclusions did not preclude coverage under the policy. The Scotts argue that the lack of notice deprived them of the opportunity to present argument and evidence that some damages fell outside the policy exclusions and that some damages could have been covered under the policy despite the exclusions. *See* Motion at 8–11. In essence, they argue that the allegedly sua sponte summary judgment rulings prejudiced them by foreclosing arguments they were not given the chance to make. *See* Motion at 5–8.

Similarly, the Scotts argue that the Court's reliance on the policy exclusions improperly extended to their direct and assigned negligent misrepresentation claims, which, they contend, are independent of the policy's coverage limitations. According to the Scotts, had they been aware (presumably from their interactions with Silverhawk) of the "no Colorado work" exclusion, they would have stopped Silverhawk's construction on their home (presumably preventing damages). *See* Motion at 6 n.3 (noting direct

claim). Similarly, they trace Silverhawk's misrepresentations of these exclusions to the "words and conduct of Koszinowski," Silverhawk's insurance producer at Buckner, and claim that "Buckner[] fail[ed] to use reasonable care in communicating to Silverhawk that liability coverage was in place for work that Silverhawk was performing in Colorado." *See* Motion at 6 n.2 (noting assigned claim). This failure to use reasonable care (alone) allegedly affected Silverhawk's decision to continue the construction project under the false assumption that adequate insurance coverage was in place. *See* Motion at 6 n.2. And Silverhawk's false assumption that adequate insurance coverage was in place allegedly manifested in misrepresentations from Silverhawk to the Scotts that adequate insurance was in place. *See* Motion at 6 n.2 (noting direct claim). The Scotts argue that no link in this chain depends on whether coverage was available under the Policy. Motion at 12. Therefore, the Scotts argue that it was "prejudicial" for the Court to determine the EIFS and subcontractor work exclusions without giving them the "opportunity" to "reiterate" that "the negligent misrepresentation claims against Buckner are not dependent on or tied to those exclusions." Motion at 11. Again, the Scotts' argument rests on their assumption that the Court's determinations on the EIFS and subcontractor exclusions were central to its summary judgment decision on all claims.

In short, the Scotts argue that a procedural error (lack of notice) directly affected their ability to argue that (1) not all damages were excluded, and (2) the misrepresentation claims were independent of the policy exclusions.

Buckner disagrees.  Regarding notice of the policy exclusions, Buckner contends that its motion for summary judgment clearly stated that "the undisputed facts do not constitute an 'occurrence' under Utah law, and without an 'occurrence,' there is no coverage under the Policy as a matter of law." Response at 4.  They claim therefore that the Scotts were on notice that they needed to provide evidence and argument about the applicability of the exclusions.

But Buckner contends that, in the end, the Scotts' claims about the policy exclusions do not justify altering or amending the judgment for another reason: the Scotts' reconsideration motion "ignores the multiple independent bases for summary judgment" which supported the Court's decision.  Response at 5. Since the Scotts "make no argument for reconsidering those bases," Buckner maintains that these independent grounds remain "sufficient to find summary judgment appropriate for each claim."  Response at 5.  Specifically, "the Court's order was not solely dependent on a finding that no coverage ultimately existed under the Policy."  Response at 11.  Instead, the summary judgment decision was "supported by bases other than the applicability of the EIFS and

subcontractor work exclusions." Response at 11. They therefore argue that the Court "can rely on those bases to deny Plaintiffs' motion." Response at 11.

In short, Buckner argues that even if the Scotts had properly briefed the exclusion issues, summary judgment was supported by other independent grounds. So reconsidering the exclusion issues would not affect the finality of that decision.

***

In sum, the Scotts claim that the Court committed procedural error by addressing sua sponte the policy exclusions, depriving them of notice and an opportunity to fairly present their direct and assigned negligent misrepresentation claims, as well as their contract claims. They therefore urge the Court either to revisit these matters with additional briefings or exclude these causation arguments from its final rulings. *See* Motion at 12. So, the Scotts' argument for altering or amending the judgment assumes that the claimed error materially impacted the disposition of this case by foreclosing arguments and evidence that could have affected the Court's decision on the merits, hence the final judgment entered.

Buckner disputes that the Scotts lacked notice. And, in any event, Buckner argues that the summary judgment rulings on the direct and assigned negligent misrepresentation claims, and the contract claims, were "supported by bases other than the applicability of the EIFS and subcontractor work

exclusions" and that the Court "can rely on those bases to deny Plaintiffs' motion." Response at 11. So Buckner assumes that any arguments or evidence the Scotts might have presented would not have affected the Court's final decision on the merits, and so the final judgment entered would remain unaffected.

Thus, the question presented for Rule 59(e) purposes is twofold. The first is whether the Scotts were on notice of the applicability of the policy exclusions or whether the Court was justified or otherwise permitted to decide the matter. The second is whether the Scotts' claimed procedural error—lack of notice regarding the policy exclusions—materially impacted the final judgment by foreclosing arguments that could have altered the Court's ruling, or whether the judgment remains final and unaffected by any such error.

For the reasons stated below, the Court concludes that the Scotts' motion lacks a sufficient factual or legal basis to warrant relief under Rule 59(e). The Scotts have not shown that the Court erred in its original factual determinations or legal conclusions, nor have they shown that any manifest injustice resulted from the Court's adjudication of Buckner's motion for summary judgment or its related rulings. Thus, nothing supports disturbing the final decisions made here. Consequently, the Court declines to reconsider its prior rulings, Dkt. 99, denies the Rule 59(e) motion, Dkt. 101, and maintains its previously entered judgment, Dkt. 100.

## LEGAL FRAMEWORK

After a district court enters a final judgment, Federal Rule of Civil Procedure 59(e) provides a mechanism for a party aggrieved by the judgment to move the Court to alter or amend that judgment. *See Castanon v. Cathey*, 976 F.3d 1136, 1140–41 (10th Cir. 2020).[2] Relief under Rule 59(e) is available only under limited circumstances, typically only when the moving party can establish one of three grounds: (1) an intervening change in controlling law, (2) new evidence previously unavailable, or (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

While Rule 59(e) grants district courts the "chance to rectify [their] own mistakes immediately after [the] decision," *Banister v. Davis*, 590 U.S. 504,

---

[2] The Federal Rules of Civil Procedure do not recognize a "motion to reconsider." *Gelder v. Coxcom Inc.*, 696 F.3d 966, 971 n.1 (10th Cir. 2012); see also *Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1243 (10th Cir. 2007) ("For nearly twenty years . . . we have admonished counsel that the Federal Rules of Civil Procedure do not recognize that creature known all too well as the 'motion to reconsider' or 'motion for reconsideration.'"). When "motions for reconsideration" are filed after final judgment without invoking a recognized rule of Civil Procedure, Courts must decide whether to treat them as either Rule 59(e) or Rule 60(b) motions. *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (warning about the potential misuse of self-styled "motions to reconsider" after final judgment). Here, the Scotts' self-styled motion for reconsideration invoked Rule 59(e), and was timely filed under that Rule, so the Court will adjudicate the motion under that Rule. *See Nelson v. City of Albuquerque*, 921 F.3d 925, 928–29 (10th Cir. 2019) (explaining that courts look beyond the form of a motion to its substance and may recharacterize a motion as one under Rule 59(e) when it questions the correctness of a judgment).

508 (2020) (internal quotation marks omitted), granting a Rule 59(e) motion is strictly limited to cases where the district court "misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete*, 204 F.3d at 1012. Rule 59(e) motions are not opportunities to relitigate issues already decided. They cannot be used to introduce new legal theories, arguments, or evidence that could have been presented before judgment. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (citation omitted).

The standard for granting a Rule 59(e) motion reflects a strong interest in finality at two levels: the district court's final decision, which marks the beginning of appellate jurisdiction, and the entry of final judgment, which starts the countdown to the end of that jurisdiction. *See generally* Bryan Lammon, *Final Decisions and Final Judgments*, 24 J. APP. PRAC. & PROCESS 59 (2024) (distinguishing the two concepts). A timely filed Rule 59(e) motion "suspends the finality of the original judgment" and only "the disposition of that motion restores the finality of the original judgment." *Banister*, 590 U.S. at 508 (citations and original alterations omitted). On that score, Tenth Circuit case law sharply distinguishes between a district court's "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment" and "the strict standards for altering or amending a judgment under 59(e)." *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008). "[O]nce the district court enters judgment," a district court's discretion

to grant relief under Rule 59(e) is "restricted." *Nelson*, 921 F.3d at 929. *See also Castanon*, 976 F.3d at 1141 (stating that relief for post-judgment Rule 59(e) motions is limited).

For example, The Tenth Circuit has consistently affirmed denials of Rule 59(e) motions where the new contentions, even if raised, would not have altered the final decision on the merits. *See e.g.*, *Headwaters Res., Inc. v. Illinois Union Ins. Co.*, 770 F.3d 885, 899–900 (10th Cir. 2014) (affirming denial of Rule 59(e) motion where new arguments were untimely and, even if considered, would not have changed the district court's decision on the merits). District courts have denied Rule 59(e) motions when the arguments raised either rehash issues already addressed or fail to demonstrate how the requested changes would affect the final decision on the merits. *See, e.g.*, *Arnold v. Farmers Ins. Co. of Arizona*, No. CIV 09-0330 JB/WDS, 2012 WL 1684537, at *18 (D.N.M. May 10, 2012) ("[R]egardless of how the Court decides the issue[s], doing so will have no impact on the disposition of this case.").[3] Thus, the Tenth Circuit

---

[3] One consequence of the interest in finality is that the moving party must address the substantive grounds supporting the original judgment. *See Charles L.M. v. Ne. Indep. Sch. Dist.*, 884 F.2d 869, 870–71 (5th Cir. 1989) (clarifying need to address all grounds justifying judgment in a Rule 59(e) motion). This prevents parties from unnecessarily extending litigation—leaving the claims, rights, or liabilities unsettled. *See Dixie Sand & Gravel Co. v. Tennessee Valley Auth.*, 631 F.2d 73, 75 (5th Cir. 1980) ("[A] party aggrieved by a judgment resting on several grounds could extend the time for appeal virtually indefinitely by filing successive motions for reconsideration challenging each of the grounds seriatim.").

precedent illustrates that district courts should not alter final judgments unless the moving party demonstrates that new evidence or arguments could materially affect the final decision on the merits.  *See, e.g.*, *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1213–14 (10th Cir. 2012) (affirming denial of Rule 59(e) motion where new evidence and arguments could not produce a different result); *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1524 (10th Cir. 1992) (similar).  Procedural errors alone are insufficient to justify altering or amending a final judgment under Rule 59(e); any alleged prejudice is relevant only if it affects the final decision on the merits.  *See Devon Energy Production Co., L.P.*, 693 F.3d at 1213 (noting that although a party pointed to facts that "could not have been anticipated" by district court the party failed to explain how those facts would alter the district court's determinations); *cf. Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202,

1214–15 (10th Cir. 2010) (affirming a grant of summary judgment despite lack of notice because the party was not prejudiced). [4]

## ANALYSIS

Applying the above principles, the Court concludes that the Scotts' contentions are either procedurally barred or substantively without merit.

*Procedurally*, the Scotts advance arguments that could have been raised before the entry of judgment. Buckner's summary judgment motion explicitly raised the issue of policy exclusions, giving the Scotts notice. Consequently,

---

[4] The central issue in determining whether a Rule 59(e) motion is proper is "whether the motion, if granted, would affect the finality of the court's disposition of the case." *St. Paul Fire & Marine Ins. Co. v. Cont'l Cas. Co.*, 684 F.2d 691, 693 (10th Cir. 1982). A final *decision*—one that ends the litigation on the merits—must resolve all claims, rights, or liabilities for it to be appealable. *See also* Fed. R. Civ. P. 54(b) (a judgment is final when it adjudicates all claims and the rights and liabilities of all parties); *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991) (order that did not dispose of any claim "could not be, and was not" final under Fed. R. Civ. P. 54(b)).

A Rule 59(e) motion will fail if the contentions do not affect the finality of the decision by altering any dispositions of claims or any rights or liabilities. *Cf. Fed. Trade Comm'n v. Minneapolis-Honeywell Regul. Co.*, 344 U.S. 206, 211 (1952) (holding that reentering or revising a judgment in an immaterial way does not restart the time for appellate review). Cases like *Devon Energy* illustrate that merely arguing procedural lapses in a Rule 59(e) motion is insufficient to show a material effect on the decision on the merits. *See also id*. (stating the test for finality as whether the judgment revises legal rights and obligations plainly and properly settled with finality). Accordingly, contentions in Rule 59(e) motions must raise "matters properly encompassed in a decision on the merits," and demonstrate that, if accepted, those matters would "imply a change in the judgment." *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 451, 452 (1982) (citation omitted).

the Scotts "cannot properly raise" the policy exclusion arguments in a Rule 59(e) motion. *Castanon*, 976 F.3d at 1139. Since "Rule 59(e) cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment," *Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993), the Scotts' arguments are procedurally barred. So the Court declines to reconsider its summary judgment decision.

*Substantively*, the Scotts' arguments fail on their merits. The Scotts incorrectly claim that all rulings were based on the EIFS and subcontractor exclusions. *See, e.g.*, Motion at 5–6 ("Policy exclusion determinations" were "central to *all* of the Court's rulings."). In fact, the Court's judgment was driven by the Scotts' failure to provide evidence sufficient to create a genuine dispute of material fact over the essential elements of their claims. Even if the exclusion issue were resolved in the Scotts' favor, that lack of evidence would remain dispositive. In other words, "regardless how the Court decides the issue[s], doing so will have no impact on the disposition of this case." *Arnold*, 2012 WL 1684537, at *18. So the Court concludes that the Scotts have not shown their contentions could "change matters of substance" in its decision on the merits. *Federal Trade Commission*, 344 U.S. at 212. Nor do the Scotts seek to "revise[] legal rights and obligations" that were "plainly and properly settled with finality" due to the Court's entry of judgment. *Id*. Thus, the Court declines to consider the exclusions issue.

All told, the Court concludes that the arguments the Scotts advanced in support of relief are both "procedurally and substantively invalid." *Castanon*, 976 F.3d at 1139.  Further, the Scotts neither pointed to an intervening change in controlling law nor introduced new evidence previously unavailable that might undermine the Court's decision on the merits.  They also established no need to correct clear legal or factual errors or to prevent manifest injustice. Nothing supports altering or amending the Court's judgment.  Dkt. 100.  So the Court denies the Scotts' motion to reconsider under Rule 59(e) in full.

### A. The Policy Exclusions

The thrust of the Scotts' complaint is the Court erred to the extent that its analysis relied on its determination the EIFS and Subcontractor Exclusions precluded coverage.  They argue this was error for two reasons: (1) Buckner did not raise the issue, so the Scotts were not on notice that they had to brief it, and (2) had they briefed it, material fact disputes would have precluded summary judgment.  Neither argument is persuasive.

#### 1. Adequate Notice

The Scotts' overall claim for Rule 59(e) relief can be consolidated into a single argument: the lack of notice deprived them of the opportunity to fully argue their case and present evidence.  The Court disagrees.

Buckner's motion for summary judgment explicitly flagged the issue of policy exclusions, which was confirmed by later filings, thus putting the Scotts

on notice regarding the need to address the applicability of these exclusions. To be sure, "a district court should not grant a motion for summary judgment on a ground not raised by the movant without at least providing notice and an opportunity to respond." *Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1148 (10th Cir. 2023).  And the Scotts highlight that the term 'EIFS' appeared only once in Buckner's motion for summary judgment.  Yet the Tenth Circuit has concluded that a party can be appropriately charged with notice even if the opposing party does not explicitly and expressly state an aspect of a case, as long as the legal and factual basis associated with the issue is sufficiently flagged.  *See id.* at 1148–49 (concluding that the defendant's brief sufficiently raised the duty-to-warn issue despite not using specific terminology).

Here, by connecting the policy exclusions to the denial of coverage, Buckner's references to these exclusions—although brief—met this threshold. Buckner expressly stated that it sought "a legal determination that Utah law applies to all four claims for relief" and that "[u]pon the application of Utah law, the undisputed facts entitle Buckner to judgment as a matter of law on each claim."  Dkt. 65 at 2.  Buckner then asserted as an undisputed fact that "Mid-Continent disclaimed coverage for the Scotts' claims against Silverhawk" pursuant to four policy exclusions, which included both the EIFS and Subcontractor Work Exclusions.  Dkt. 66 at 4.

Indeed, that wasn't the only place Buckner's brief raised the policy exclusions and those exclusions downstream effect on the Scotts' damages:

- "If the policy does not afford coverage to Silverhawk in the first instance . . . Plaintiffs cannot recover now losses which were never recognized by the policy in the first instance." *Id.* at 8.

- "No evidence exists that Buckner represented to Silverhawk that the insurance policies underwritten by Mid-Continent provided coverage for the types of construction defects alleged by Plaintiffs. Buckner represented to Silverhawk what they do to all clients – Silverhawk possessed the coverage that Silverhawk requested, reviewed, and approved." *Id.* at 10.

- "[I]f any contract existed for coverage of the Plaintiffs' home, prior dealings determine that it was to procure policies that mirror the prior dealings with the same coverages and exclusions." *Id.* at 13.

- "The Scotts seek reimbursement for expenses allegedly incurred to correct work for which they contracted with Silverhawk [] as well as expenses incurred by Silverhawk defending claims of faulty workmanship and payments to the Scotts to correct the faulty work." *Id.* at 8.

The root of the Scotts' lawsuit is that Mid-Continent denied coverage under the policies in place. And as the Court explained, all the Scotts' properly supported damages were things it argued *should* have been covered, defended, or indemnified against *if* Buckner had fulfilled its purported contractual and tort duties. Put another way, if Buckner had done its job as the Scotts allege it should have, coverage would have kicked in, and there would be no damages

or need for Silverhawk to defend itself. So at its core, this case turns on whether coverage would have existed had Silverhawk provided Buckner with sufficient instruction or information to modify the policies in place to cover the Scotts' project. As explained, the analysis differs based on the policy exclusion under discussion, and no properly supported facts put forth by the Scotts support concluding either (1) that any of their claimed damages would not have been precluded by the policy's other exclusions or (2) that Silverhawk's conduct sufficiently instructed or informed Buckner that it should modify those exclusions.

The Scotts' made a strategic decision to focus their lawsuit on the "no Colorado work" exclusions. But Buckner's assertions alerted the Scotts to the relevance of the other policy exclusions to Buckner's defense strategy. In fact, the Scotts "agreed" it was an undisputed fact that Mid-Continent disclaimed coverage under, among other things, the EIFS, and subcontractor work exclusions. Dkt. 80 at 9.

What is more, Buckner's reply further reinforced the legal significance of this factual assertion:

> Hasleton's self-serving assertion that he requested an insurance policy for the Scotts' project in Colorado *cannot avoid the fact that eliminating the 'Colorado exclusion' from such policy does not result in coverage under the policy for the Scotts' claims because of multiple exclusions cited by Mid-Continent in its coverage disclaimer letters to Silverhawk (Doc. 66-1),*

> *including the EIFS and the subcontractor exclusions in*
> *the policy.*  Review of the policies issued from 2012
> until 2014 reveals that the Mid-Continent policies
> contained these exclusions.  Silverhawk never
> contested the application of the cited exclusions by
> filing a declaratory judgment action, effectively
> conceding the lack of coverage from Mid-Continent for
> the claims brought by Plaintiffs for the construction
> defects.  *No facts can demonstrate Plaintiffs' right to*
> *recover by assignment that which Silverhawk could not*
> *recover in the first instance.*

Dkt. 82 at 2 (emphasis added).[5]  *See also* Dkt. 66-1 (including the EIFS and the

subcontractor exclusions in the policy).  The Scotts assert that this argument

was pressed only in Buckner's reply brief.  The Court disagrees, but even if the

Court assumed as much, Tenth Circuit case law does not prohibit a district

court from "rel[ying] on new materials or new arguments in a reply brief,"

provided that the court does not "forbid the nonmovant from responding to

[the] new materials."  *Pippin v. Burlington Res. Oil And Gas Co.*, 440 F.3d

1186, 1192 (10th Cir. 2006) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159,

1165 (10th Cir. 1998)).  The Court never precluded the Scotts from filing a

surreply in response to these arguments.  Nor do the Scotts contend that they

did not have enough time (or needed more time) to respond adequately to the

---

[5] At the very least, Buckner's reply brief contained an expressed and substantive discussion on how the EIFS exclusion might impact their claims.  Thus, contra the Scotts' argument (at 7), it is *not* the case the EIFS and subcontractor exclusions were "left *untouched* in *any* of the arguments that were actually developed by the parties in their *briefing*." (emphasis added).

expressly stated argument in reply.  Indeed, the Scotts had "four years" to do so.  Motion at 1.  Their choice to decline to file a surreply was a strategic decision.

And even looking beyond whether *Buckner* put the Scotts on notice of this issue, the damages-policy tension was intrinsic to the Scotts' claims.  The premise of the Scotts' lawsuit is that Buckner provided Silverhawk inadequate coverage relative to what Silverhawk requested.  The adequacy of the insurance provided can be analyzed only by reference to why the Scotts' believed it inadequate—i.e., its alleged shortcomings.  Without analyzing why the coverage was allegedly inadequate (why it precluded coverage), the Court could not consider what "adequate" insurance might have looked like—and so what contractual or tort duty Buckner may actually have born.

Further, the Scotts assert an oral contract to procure insurance existed between Buckner and Silverhawk.  To evaluate whether such a contract existed, the Court needed to determine whether the contract's "essential terms" were established.  *Harris v. Albrecht*, 2004 UT 13, 86 P.3d 728, 731.  To determine whether essential terms were established, the Court needed to consider what terms were essential to the contract.  "Scope" is an essential term, *id.*, of which exclusions are part are parcel.  The Scotts put forth no evidence that Buckner and Silverhawk explicitly discussed scope, arguing instead that these terms could be implied from prior dealings.  Dkt. 80 at 16

(essential "elements can be found by implication"); *id.* at 17 ("Two policies (the Mid-Continent CGL and a builder's risk) were in place during that time period which, Silverhawk believed, could have provided some or all of that coverage, and in the past had made similar requests for coverage for projects in Wyoming and Idaho which were handled similarly").

The Scotts posit the oral contract they allege exists can be found by backfilling with terms—including scope of the policy to be procured—pulled from the existing policies and prior dealings. That would pull in the existing policy exclusions—including the EIFS and subcontractor exclusions. But to get any relief, *that* policy would have had to provide coverage the existing policies didn't. That analysis required determining whether one, some, or all of the existing policy exclusions independently precluded all the Scotts' properly supported damages. As the Court concluded, they did.

To sum up, the legal operation of the policy exclusions was explicitly raised, agreed upon as undisputed facts, and inextricable from the Scotts' own claims. Therefore, they were part of the factual landscape that the Court needed to consider when determining whether summary judgment was appropriate. The Scotts argued an oral contract to procure insurance existed, the essential terms of which (including scope) would be backfilled from the existing policies and prior dealings. The consequence of that argument is that the policy would contain the existing exclusions to the extent that Buckner was

under no duty to remove them (as the Court explained, it wasn't).  So the *legal* consequence of those terms being imported into the policy—and their operation on the Scotts' claimed damages—is one inextricably tied to the Scotts' claims in this lawsuit.

So the Court disagrees with the Scotts that the policy exclusion issue was raised and adjudicated by the Court sua sponte.  And the Court concludes it was not improper for it to consider the policy exclusion issue.

### 2.  No Prejudice

In any event, the Scotts cannot show prejudice through their argument about damages.  The Scotts argue it was error for the Court to rely on the EIFS and subcontractor work exclusions because "the theory of liability of the assigned claims is that Silverhawk would not have incurred some or all of the costs of defending the Scotts' lawsuit but-for the Colorado work exclusion – *not* that Silverhawk would have been indemnified against the Scotts' claims.  The damages alleged in this lawsuit do not include payments Silverhawk made to settle the Scotts' claims."  Dkt. 111 at 5.  Thus, the Scotts distinguish between (and argue the Court conflated) a duty to defend and a duty to indemnify—the former of which is broader than the latter.  *Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp.*, 2014 UT 28, 332 P.3d 908, 920.  And since they claim as damages Silverhawk's costs spent defending against their suit, they argue they only needed to allege facts sufficient to prove Mid-Continent would have

defended Silverhawk against their claim but-for the existence of the "no Colorado work" exclusion.  Dkt. 111 at 5–6.

The problem with the Scotts' argument is they ignore that the duty to defend only triggers once they have alleged plausible "facts or claims that might fall within the ambit of the policy[.]"  *Summerhaze Co., L.C.*, 2014 UT 28, 332 P.3d at 920.  The implication is that Silverhawk would have tendered the Scotts' claims for defense (and Mid-Continent must have provided it) had the policy not contained the "no Colorado work" exclusions.  But in its Order, the Court reviewed (1) Mid-Continent's policy denial letter, (2) the CGL policy, and (3) the Scotts' underlying Complaint against Silverhawk and concluded that the Scotts' complained-of damages did not "fall within the ambit of the policy," *id.*, given the existence of the EIFS and subcontractor exclusions.  Order at 4–7.  This meant Mid-Continent would *not* have been required to defend Silverhawk even if the "no Colorado work" exclusion was absent from the policy.  And, as the Court explained, the Scotts have not established that the policies other exclusions (1) existed because of some malfeasance or omission by Buckner or (2) would pull the Scotts claimed damages into the policy's ambit—meaning the existence of those exclusions undercuts their claim to Silverhawk's defense costs.

Accordingly, the Scotts' have not established how the Court's consideration of the policy's other exclusions prejudiced them.

- 23 -

## B.  Alternative and Independent Bases

As the Court explains below, even assuming inadequate notice of the exclusions, the Scotts still can "identif[y] no way" that they were prejudiced by the Court's "grant of summary judgment on the[ir] claim[s]." *Johnson*, 594 F.3d at 1214.  That is because even if it were to omit discussion of those policy exclusions or decide the issue in the Scotts' favor, it is not the case that "triable issues of fact remain that preclude granting judgment as a matter of law in favor of Defendant The Buckner Company under Rule 56."  Motion at 12 (requesting omission of exclusion issue or additional briefing on exclusion issue).  The Court's decision stands on bases that are logically and legally independent of those issues.

In essence, deciding the exclusion issues for the Scotts would substantively mean that the exclusions cited do not apply, potentially leading to coverage under the policy.  But the Court's decisions on each claim were based on broader grounds, such as the lack of meeting of the minds, specific instructions, special relationship, and reasonable reliance.  These broader issues render the exclusion determinations peripheral to the ultimate summary judgment rulings on each claim.  Therefore, the Court's rulings remain logically independent of the exclusion issues, and thus deciding exclusion issues for the Scotts would not change the outcomes of any asserted claims:

**1. Breach of Contract**.  Resolving the exclusion issues in the Scotts' favor does not change the Court's conclusion that there was no meeting of the minds because the evidence establishes a lack of mutual understanding between the parties regarding the insurance coverage needed.  Similarly, the outcome of the exclusion issue does not produce an effect on the conclusion that evidence showed only a general instruction to procure coverage.  Thus, the outcome of this claim stands independently of the exclusion issue.

**2. Negligent Failure to Procure Insurance**.  The Court based this decision on evidence that Silverhawk gave Buckner no specific instructions.  Resolving the exclusion issues for the Scotts would not alter the absence of a specific directive to Buckner about coverage types.  Therefore, this claim would still fail.

**3. Assigned Negligent Misrepresentation**.  The exclusion issues do not impact the Court's conclusions that there was no special relationship.  Nor do they affect the conclusion about Silverhawk's unreasonable reliance on Buckner's representations given the circumstances: the multiple renewals of the policy over the years without addressing the exclusions.  Resolving the exclusion issue for the Scotts disturbs neither conclusion.  Thus, the outcome remains undisturbed.

**4. Direct Negligent Misrepresentation**.  The exclusion issues are irrelevant to the determination that Buckner did not directly communicate with

the Scotts and that no special relationship existed between Buckner and Silverhawk that would trigger a duty to do more than what it did.  Consequently, Buckner cannot be liable for Silverhawk's misunderstanding of its coverage, and the Scotts failed to establish an independent duty of care under Utah law. Even if the Scotts' exclusions issues did not exist, this does not create liability where none existed.

The Court will explain each claim in turn.[6]

### a. Breach Of Contract to Procure Insurance

#### i. *Summary Judgment Order*

For the breach of contract claim, the Court determined that the Scotts' evidence related to the existence of a contract was legally insufficient.  *See* Order at 17 (characterizing the "conversation evidence" provided to establish the existence of the contract as "scant on specifics.").  The Court concluded that the evidence provided was insufficient as a matter of law to show that a contract to procure insurance was formed and granted judgment in Buckner's favor.

---

[6] This Memorandum Opinion makes no substantive changes to the original summary judgment order and addresses that order only in the context of disposing of the Rule 59(e) motion.  Therefore, unless otherwise expressly noted, the summaries of previous rulings do not alter the original factual determinations or legal conclusions contained in the original summary judgment order. Any legal analysis clarifies rather than supplants the original analysis.

Order at 17. This ruling was based on multiple legal conclusions, not solely on policy exclusions.

### a. Meeting of the Minds (Contract Validity)

The Court first concluded that "no reasonable jury could find that there was a meeting of the minds" regarding "the term 'full coverage.'" Order at 17. Under Utah law, a contract to procure insurance requires a meeting of the minds on all essential features, including the scope of coverage. *See* Order at 15 (quoting *Terry v. Bacon*, 2011 UT App 432, 269 P.3d 188, 195); *id.* (citing *Harris*, 2004 UT 13, 86 P.3d at 731) ("[S]cope" is an "essential" term of a contract to procure insurance). Not only must both parties "assent to the same thing in the same sense," but also both parties must do so "without doubt *or difference.*" *E.B. Wicks Co. v. Moyle*, 103 Utah 554, 137 P.2d 342, 346 (1943) (emphasis added). To determine whether evidence suffices to demonstrate this, courts can look to correspondence between the parties. *See*, *e.g.*, *Sackler v. Savin*, 897 P.2d 1217, 1222 (Utah 1995) (determining that correspondence between parties showed no meeting of the minds on essential settlement terms).

Here, the parties' subsequent exchanges "clearly demonstrate[d]," *Crismon v. W. Co. of N. Am.*, 742 P.2d 1219, 1222 (Utah Ct. App. 1987), that they did not have a meeting of the minds regarding the meaning of "fully covered," Dkt. 80 at 20; Dkt. 80-3 at ¶ 2, thus no jury could conclude that they "assent[ed]

to the same thing." *E.B. Wicks Co.*, 103 Utah at 564.  Deposition testimony from Mr. Hasleton demonstrated that he called Beat Koszinowski at Buckner and told him that he wanted to make sure that Silverhawk was "fully covered for the work."  Order at 5 (quoting Dkt. 80-3 at ¶ 2–4) (emphasis omitted).  While Mr. Hasleton admits he can't "recall the exact sentences that we spoke about the Scott project" he testifies they were "something along the lines of 'yeah Tom, we'll get that taken care of' or 'you're good there.'  Very similar to what he said before."  *Id.* ¶ 4.  Yet "despite updating the Property Insurance policy to reflect the Scott project, Buckner *never altered the existing CGL policy— exclusions 1 and 2 of which categorically precluded coverage for projects in Colorado*[.]"  Order at 5 (citing Dkt. 77-2 at 2).

This evidence demonstrated that Silverhawk did not understand "fully covered" in the *same way* that Buckner understood "fully covered."  In essence, Mr. Hasleton understood that the project required a different policy than previously provided; Mr. Koszinowski understood that the project required the same policy as previously provided.  Consequently, the disagreement regarding this essential term confirms that a contract to procure the insurance policy, as understood by Mr. Hasleton (Silverhawk), did not exist in the mind of Mr. Koszinowski (Buckner).  *See E.B. Wicks Co.*, 103 Utah at 564 (emphasizing the necessity of mutual assent on all terms without doubt or difference for a valid

contract).  The Scotts provided no other evidence to infer that both parties understood "fully covered for the work" in the same way.

The Scotts therefore failed to provide evidence sufficient to create a genuine dispute of material fact over whether the parties had a meeting of the minds about the scope of coverage.  Accordingly, the legal conclusion that no reasonable jury could find that a valid contract existed between Silverhawk and Buckner followed.[7]

### b.  Essential Features (Required to Procure)

The Court *alternatively* concluded that the putative contract otherwise "lacked essential features of a final contract to procure."  Order at 17; *see also id*. at 18 ("[B]eyond scope, other reasons support concluding that Buckner and Silverhawk did not form a contract[.]").  Although Buckner disputed whether

---

[7] To be sure, if the exclusions applied then"[t]he Scotts' claim [was] *cognizable* only if Silverhawk understood a 'full coverage' policy as excluding the EIFS and subcontractor work exclusions, since those exclusions independently preclude coverage." Order at 17 (emphasis added).  But, *contra* the Scotts' Motion (at 6), it is not the case that the Court's final decision on the merits turned on the determination that "Buckner could not have caused any damage" to Silverhawk "unless Silverhawk had specifically requested a policy without an EIFS or subcontractor work exclusion[.]"  The critical—and determinative—issue entitling Bucker to a judgment as a matter of law on the Scotts' breach of contract claim was not the *absence of affirmative evidence* showing a specific request for certain coverage terms but the *presence of affirmative evidence* showing *disagreement* over what "fully covered" entailed.  Thus, the focus was not a technicality regarding specific requests, but a broader, more foundational issue of mutual agreement in contract formation.

the Hasleton-Koszinowski conversation occurred, the Court assumed it did. Order at 20.  Even viewing the evidence in the light most favorable to the Scotts as the non-movant, the Court determined that the evidence showed only that Silverhawk "generally inquired about insurance."  Order at 18.  The Court therefore determined that the only permissible inference from the undisputed evidence was that Silverhawk made "a general request for insurance."[8]  Since the undisputed evidence showed only a general request for insurance, it could not establish a definite direction to consummate a final contract.  Consequently, the Court granted summary judgment on the breach of contract claim on this basis.[9]

### ii.  Motion to Alter or Amend Judgment

The Scotts contend that "the summary judgment that the Court granted to Bucker sua sponte was not harmless," because they had "not [been] given fair notice that they would need to produce evidence of all the damage that was done to the house beyond the faulty EIFS to defeat summary judgment."

---

[8] *See* Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment ("Once the court has determined the [undisputed] set of facts. . .it must determine the legal consequences of these facts and the permissible inferences from them.").

[9] The Court's conclusion also rested on a lack of sufficient evidence to show that the parties' prior dealings could infer essential contract terms.  No evidence sufficed to legally license this inference.

Motion at 8.   Thus, the Scotts argue that the Court erred in deciding dispositive issues on grounds that they were not informed beforehand and needed to provide evidence to demonstrate—specifically, why the EIFS and subcontractor exclusions did not preclude all coverage under the Policy.   Buckner counters that the Scotts knew or should have known that they needed to provide evidence and argument related to the applicability of the exclusions because Buckner stated in its motion for summary judgment that "the undisputed facts do not constitute an 'occurrence' under Utah law, and without an 'occurrence,' there is no coverage under the Policy as a matter of law." Response to Motion to Reconsider (Dkt. 108 at 4).   But as explained in *supra* (A)(1), the Court agrees that the Scotts had notice of the policy exclusions and their legal operation.

Moreover, specific to this claim, the Tenth Circuit has concluded that a party can be appropriately charged with notice even if the opposing party does not explicitly and expressly state an aspect of a case, as long as the legal and factual basis associated with the issue is sufficiently flagged.   *See, e.g.*, *Butler*, 74 F.4th at 1148–49 (concluding that the defendant's brief sufficiently raised the duty-to-warn issue despite not using specific terminology).   By connecting the policy exclusions to the denial of coverage, Buckner's references to these exclusions—although brief—met this threshold.   In addition to the above, Buckner argued that the Scotts "cannot recover losses which were never

recognized by the policy in the first instance," Motion at 8, directly questioning the validity of the Scotts' claims.[10]  Given the undisputed facts about the exclusions, their legal effect—their applicability—was adequately noticed.  The Scotts should have been aware of the need to contest the exclusions' applicability or address them substantively.  Their choice to ignore these issues was a strategic decision.

And as above, the Scotts have not established prejudice.  Even if they did not have notice, the Scotts have not identified additional arguments or evidence that they could have produced or relied on to "undermine" this Court's summary judgment ruling.  *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1151 (10th Cir. 2017).  That is, the Scotts have "identifie[d] no way" that they were

---

[10]   And recall that the entire premise of the Scotts' lawsuit is that Buckner provided Silverhawk with inadequate coverage relative to what Silverhawk had requested.  The adequacy of the insurance provided can be assessed only by examining why the Scotts believed it to be inadequate—specifically, its alleged shortcomings.  Without analyzing why the coverage was purportedly inadequate (why it precluded coverage), the Court could not determine what "adequate" insurance might have entailed, and, consequently, what contractual or tort duties Silverhawk may have borne.

The Scotts also argued that essential terms of the contract could be inferred from the prior dealings between Silverhawk and Buckner.  If the Court were to conclude that an oral contract to procure had been consummated, it would then need to determine what Silverhawk was obligated to procure.  The Scotts assert that these prior dealings, and thus the prior policies, should serve as the touchstone for this analysis.  To resolve this dispute, therefore, analyzing the policies was essential—indeed, inevitable.

prejudiced by the Court's "grant of summary judgment *on the[ir] claim.*" *Johnson*, 594 F.3d at 1214.  To be sure, the Scotts identify "different arguments" that "directly address" the Court's allegedly sua sponte reasoning, but they do not demonstrate how overlooking those arguments resulted in "prejudice[]" in the rulings that resulted in this Court's "entry of judgment."  *Id.* at 1151–52.

Nor could they.  The Scotts do not argue that Buckner's Motion for Summary Judgment failed to put them on notice to provide all their evidence *about a meeting of the minds.  See, e.g.*, Motion for Summary Judgment (Dkt. 66) at 12–13 (arguing that a Plaintiff must prove there was a meeting of the minds to maintain a contract claim); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (recognizing the importance of the losing party having the notice to present all their evidence before summary judgment can be entered).  The Scotts neither demonstrated that the Court committed legal error nor presented newly discovered evidence to address the evidentiary deficiencies in establishing contract formation.  The motion for reconsideration thus provides no reason for the Court to question "the correctness of the underlying judgment."  *Hayes Fam. Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017).  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

The Court, therefore, declines to disturb its prior ruling on the breach of contract to procure insurance claim but clarifies that its determinations regarding the EIFS and subcontractor work exclusions were not necessary to the final judgment. The breach of contract claim fails independently as a matter of law due to insufficient evidence establishing a meeting of the minds or essential contract features. The Court also finds no intervening change in the controlling law, no new evidence previously unavailable, and no need to correct clear error or prevent manifest injustice. Accordingly, the Court denies the Rule 59(e) motion with respect to the breach of contract claim.

### b. Negligent Failure to Procure Insurance

#### i. *Summary Judgment Order*

As for the claim for negligent failure to procure insurance, the Court concluded that the Scotts showed insufficient evidence of a "specific instruction to procure a policy without the EIFS and subcontractor work exclusions." Order at 23. The "[c]reation of a contract to procure insurance requires that the agent know or have ready access to the information needed to procure the insurance or be able to imply the terms from prior dealings." *Harris*, 2004 UT 13, 86 P.3d at 732. Despite assuming that the conversation between Hasleton and Koszinowski took place, Order at 20, the Court determined that the evidence was insufficiently specific to impose on Buckner the obligation to procure a specified type of insurance. In the Hasleton-Koszinowski conversation,

Hasleton mentioned needing "two kinds of policies" and "assumed that the policies already in place . . . may actually be enough with possibly some changes to them . . . and that Beat would tell [him] if [they] needed to do something more." Order at 21 (quoting Dkt. 80-3 at ¶ 2–4) (emphasis in original).

This was the only other record evidence of a request of any kind. *See also* Response at 3 ("Silverhawk communicated to Buckner that Silverhawk wanted full coverage for a project that it was going to be building in Colorado that would cost about $750,000. Buckner responded to the effect that it would be taken care of or it was good."). The Court considered the broader context of the instructions given. Specifically, it found that there was a lack of any specific instructions from Silverhawk to Buckner regarding the required insurance coverage, not just instructions about EIFS and subcontractor exclusions. The evidence presented showed only a "general" request to be "fully covered," which is "insufficiently specific" to establish a duty on Buckner's part to procure specific types of insurance. Order at 22. Consequently, the Court granted summary judgment on their assigned negligent failure to procure insurance claim because of the overall lack of specific, clear instructions about the required insurance coverage. This broader issue underpinned the Court's ruling, making the specific exclusions one aspect of the general insufficiency in the Scotts' instructions.

*ii. Motion to Alter or Amend Judgment*

The Scotts' assertion that this Court determined that "unless Silverhawk had specifically requested a policy without an EIFS or subcontractor work exclusion, Buckner could not be liable for negligent failure to procure," Motion at 6, is not inaccurate. *See, e.g.*, Order at 20 ("[T]he court must determine whether . . . Buckner incurred a duty to procure a CGL policy omitting the EIFS and subcontractor work exclusions."). But this assertion is incomplete when considering what the Court ultimately concluded.

The Court clarifies that its decision was based not solely on the absence of specific instructions to exclude the EIFS and subcontractor work exclusions. Instead, the broader issue was Silverhawk's failure to provide any specific instructions on the kind of insurance coverage they required. *See* Order at 21 (quoting *Am. Loans, Inc. v. Arthur J. Gallagher & Co.*, No. 2:18-CV-00558, 2020 WL 1473995, at *3 (D. Utah Mar. 26, 2020)). This lack of specificity encompassed not just exclusions but also the overall details of the coverage that Silverhawk needed. The Scotts do not argue that the Court clearly erred in interpreting or applying Utah law on an insurance agent's duties. And Utah law does not impose a duty on insurance agents to procure specific types of insurance without a specific request. Thus, the Scotts' negligent failure to procure coverage claim failed under Utah law—and independently of the argument about the exclusions contained in their motion to reconsider. *See*

*Headwaters Resources, Inc.*, 770 F.3d at 900 (affirming district court's denial of Rule 59(e) motion where neither arguments nor evidence sufficed as a matter of law to alter the court's decision).

The Court declines to disturb its prior ruling on the negligent failure to procure insurance claim but clarifies that its determinations regarding the EIFS and subcontractor work exclusions were not necessary to the final judgment. The claim failed independently as a matter of law due to insufficient evidence of specific instructions on the insurance coverage Silverhawk required.

The Court also finds no intervening change in the controlling law, no new evidence previously unavailable, and no need to correct clear error or prevent manifest injustice. Accordingly, the Court denies the Rule 59(e) motion with respect to the negligent failure to procure insurance claim.

### c. **Negligent Misrepresentation Claim (Assigned)**
#### i. *Summary Judgment Order*

For the assigned negligent misrepresentation claim, the Court concluded that the Scotts did not provide sufficient evidence to establish "a special relationship" between Silverhawk and Buckner. Order at 26. If no special relationship exists, then the agent has no extended duties beyond those typical in contractual interactions. And the Court concluded that "no [tort] duty existed." Order at 26, 29. Because no evidence supported classifying the contractual

relationship between Buckner and Silverhawk as a special relationship relevant to tort liability, this negated any duty to disclose or discuss *any* specific policy exclusion.

Furthermore, and independently, the Court concluded that "Silverhawk's reliance on Buckner was unreasonable as a matter of law" because of the "the multiple renewals of the allegedly deficient policy" without reviewing its terms.   Order at 29.   *See also* Order at 27 (quoting *American Loans, Inc.*, 2020 WL 1473995, at 5).

### ii.  Motion to Alter or Amend Judgment

In their motion for reconsideration, the Scotts argue that the "assigned claim for negligent misrepresentation [is not] dependent on coverage being available under the Policy."   Motion at 6 n.2.   They assert that they "never argued, contended, or suggested that Buckner had a duty to provide advice about the EIFS and subcontractor exclusions."   Motion at 6 n.2.   Instead, they contend that Buckner, through the words and conduct of Mr. Koszinowski, "failed to use reasonable care in communicating to Silverhawk and others that liability coverage was in place for work being performed in Colorado."   Motion at 6 n.2.   The Scotts argue that the Court's focus on the EIFS and subcontractor exclusions was prejudicial, leaving them "without the opportunity to *reiterate*

that the negligent misrepresentation claims against Buckner are not dependent on or tied to those exclusions." Motion at 11 (emphasis added).[11]

The Court did not "misapprehend[] [the Scotts'] position." *Servants of Paraclete*, 204 F.3d at 1012. To be sure, successfully opposing summary judgment required the Scotts to show specific facts about the words and conduct of Buckner's employee—Mr. Koszinowski—and turns on whether those facts created a dispute over whether Mr. Koszinowski suggested that a type of insurance was in place. But Mr. Koszinowski words, conduct, and the context in which he acted and spoke were largely undisputed. And so the legal consequence of those facts remained, and also implicated whether Silverhawk reasonably relied on Mr. Koszinowski's conduct.

Utah law "holds insurance agents to accurately representing policy provisions and honestly answering consumer questions" and will "hold both principal and agent liable for misrepresentations upon which consumers reasonably rely." *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 36, 158 P.3d

---

[11] This contention does not cast any doubt on the Court's interpretation or application of the legal precedents about the limited scope of an agent's duties under Utah law. *See* Order at 25–26 (collecting cases). Nor does the Scotts' position in their Rule 59(e) motion offer an alternative legal basis for establishing a special relationship. Because the Court's decision pivoted on the absence of a "*special* relationship," Buckner's duty remained within the *general* expectations of procuring the requested insurance and providing the policy documents.

1088, 1096.  But Silverhawk "[could not] rely on representations or acts if they are contrary to [their] knowledge of the truth or if [they] had the means by which with reasonable diligence [they] could ascertain the truth." *Id.* at 1095. Consequently, the Scotts' claim—assigned to them by Silverhawk—"cannot prevail" if facts show that Silverhawk had "access to information, which if considered, would have alerted [Silverhawk] to question whether the coverage was available." *Remund v. State Farm Fire & Cas. Co.*, No. 2:07-CV-448-CW-PMW, 2010 WL 2025591, at *5 (D. Utah May 18, 2010), *aff'd*, 483 F. App'x 403 (10th Cir. 2012).  In other words, on these facts, if reasonable diligence includes reading the terms, and reading the terms would have enabled Silverhawk to ascertain the truth about coverage, then it would follow that it was unreasonable for Silverhawk not to have read the terms.  *See Youngblood*, 2007 UT 28, 158 P.3d at 1096.

That conclusion followed.  When the facts show that the language in a policy is clear, and there is no evidence that the terms cannot be located or are otherwise complex, "insurance purchasers fail to make the effort to read and understand the content of their insurance policies at their peril."  *Id.*  The Court already concluded that the exclusion terms were "unambiguous."  *Id.* Nor did Silverhawk assert that the exclusion terms could not be "located" or that "the language [was] unintelligible, incomplete, or simply too complex."  *Id.* So no reason precludes determining that reasonable diligence included reading

the terms.  Given the multiple renewals of the policy over several years without addressing the exclusions, Order at 27–29, the Court therefore concluded that Silverhawk's reliance on Buckner was unreasonable under the circumstances.

The Scotts' assertion that Silverhawk would have halted construction sidesteps the conclusion that Silverhawk's reliance on Buckner for knowledge of the no Colorado work exclusion was unreasonable.  Order at 27–29.[12]  Certainly, "a motion under Rule 59(e) allows a party to reargue previously articulated positions to correct clear legal error."  *Hayes Family Trust*, 845 F.3d at 1005.  But reiteration of previously available facts that do implicate or involve a "clear legal error" or a "misapprehen[sion]" of the Scotts' "position," *Servants of Paraclete*, 204 F.3d at 1012, doesn't cut it for Rule 59(e) purposes.

The Scotts' motion challenges neither the conclusion that Buckner was under no legal duty in the absence of a special relationship nor the conclusion that Silverhawk's reliance was unreasonable, thus entitling Buckner to a judgment as a matter of law on the assigned negligence claim.  The motion also

---

[12] The legal relevance of Mr. Koszinowski's undisputed words and conduct depended on how the Court evaluated Silverhawk's actions.  *See* Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment ("Once the court has determined the [undisputed] set of facts . . . it must determine the legal consequences of these facts and the permissible inferences from them.").  If the Court had not found Silverhawk's conduct legally unreasonable, then Mr. Koszinowski's conduct might have been legally significant.  But since the Court finds Silverhawk's conduct to be legally unreasonable, Mr. Koszinowski's actions are legally irrelevant.

fails to introduce new information that could result in a legally significant factual determination that might alter that legal conclusion. For all those reasons, reconsideration is unwarranted.

The Court therefore declines to disturb its prior ruling on the negligent failure to procure claim but clarifies that its determinations regarding the EIFS and subcontractor work exclusions were not necessary to the final judgment because the negligent failure to procure claim fails independently as a matter of law due to a lack of a special relationship and unreasonable reliance.

The Court also finds no intervening change in the controlling law, no new evidence previously unavailable, and no need to correct clear error or prevent manifest injustice. Accordingly, the Court denies the Rule 59(e) motion with respect to the negligent failure to procure claim.

### d. Direct Negligent Misrepresentation Claim

#### i. Summary Judgment Order

The Scotts alleged that Buckner negligently misrepresented to Silverhawk that Silverhawk had liability insurance for their home construction in Colorado, and they argued that there's a jury question of whether they could reasonably rely on this information as proof of Silverhawk's insurance coverage for the project. Response at 13–14. The Court determined the fact that "Buckner never directly communicated with the Scotts" was undisputed. Order at 34. It then identified no Utah law supporting the "pass-through" theory

of liability for negligent misrepresentation that the Scotts wished to advance. *Id*. Nor did the Scotts identify any authority—much less cite Utah precedent (or even Colorado precedent)—for their pass-through theory of liability of negligent misrepresentation in their Response in Opposition. *See also* Reply at 9 ("Silverhawk's representations otherwise to Plaintiffs cannot be imputed to Buckner in support of Plaintiff's First Claim for Relief.").

### ii. *Motion to Alter or Amend Judgment*

The Scotts argue in their motion for reconsideration that the Court's summary judgment decision contains clear errors in the application of law, particularly with respect to the duty of care owed by professionals to third parties. The Scotts contend that their direct negligent misrepresentation claim is independent of the coverage limitations posed by the EIFS or subcontractor exclusions in any event. They claim that had they been aware of the "'no Colorado work' exclusion, they would have 'put a stop to the construction project by Silverhawk.'" Motion at 6 n.3. Thus, they believe that the Court's analysis failed to recognize that their direct negligent misrepresentation claim does not rely on whether the damages were covered under the policy, rendering the applicability of these exclusions immaterial.

The Scotts argued that the Court should find that Colorado law governed the direct negligent misrepresentation claim. The Court ultimately concluded that Utah law applied to the Scotts' direct negligent misrepresentation claim.

*See* Order at 30–34 (conducting choice-of-law analysis).[13]  But when discussing their assigned claims, the Scotts cited *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.* for the proposition that "[u]nder Utah law, there must be reasonable reliance on a careless or negligent misrepresentation of a material fact made by a party who had a pecuniary interest in the transaction, who was in a superior position to know the material facts, and should have reasonably foreseen that the other party was likely to rely upon the fact."  Response to Motion for Summary Judgment (Dkt. 80) at 14 (citing 713 P.2d 55, 59 (Utah 1986)).  In the context of the Scotts' direct claim against Buckner, as the Court explains, the *Price-Orem* decision is instructive but does not fully support the Scotts' position.[14]

In *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55 (Utah 1986), the Utah Supreme Court recognized the tort of negligent misrepresentation, allowing a third party to recover damages for reasonable reliance on a professional's negligent misrepresentation of a material fact.  The case

---

[13] The Scotts' Rule 59(e) motion does not take issue with the Court's legal determination that Utah law applies to their direct negligence misrepresentation claim.

[14] Both parties seemed to agree that Colorado and Utah are similarly situated with respect to the legal doctrine underpinning the *Price-Orem* decision.  *See* Motion for Summary Judgment (Dkt. 66) at 11 ("The outcome of this claim would not change if Colorado law applied"); Response at 14 ("Like Colorado, privity is not required.") (citing *Price-Orem* at 59).

involved a surveying company that negligently staked a building, and the property owner relied on the accuracy of the survey.  The court concluded that the surveying company owed a duty of care to the property owner even without a direct contractual relationship.  *Id.*  The Utah Supreme Court acknowledged that it had recognized that "a party injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact."  *Price-Orem Inv. Co.*, 713 P.2d at 59 (citations omitted). The Court's holding established the principle that privity of contract is not a prerequisite for a negligent misrepresentation claim.  Moreover, professionals who have a pecuniary interest in a transaction and are in a superior position to know material facts can owe a duty of care to third parties who reasonably rely on their representations.  This principle appears directly relevant to the Scotts' argument that Buckner, as an insurance agent, owed a duty of care to them as third parties even though they did not have a direct contractual relationship.

Yet the Scotts' objection misunderstands why the Court distinguished their case from *Price-Orem*.  Recall that there, a jury determined the defendant—a surveyor—had negligently staked a building.  The surveyor argued that

because Price-Orem was not in privity of contract with it (it had contracted with Price-Orem's contractor) it lacked standing.

Unlike *Price-Orem*, that Buckner and the Scotts were not in privity was irrelevant to the Court's conclusion. *See* 713 P.2d at 59 ("Privity of contract is not a necessary prerequisite to liability."). Rather, the key fact here is the Court's conclusion that *Buckner was not liable to Silverhawk for negligent misrepresentation in the first instance.* This is significant based on the unique facts here: since Buckner never communicated with the Scotts, there is only one set of representations (or misrepresentations or omissions) to which liability could attach (to analogize, there is only one survey that could be performed). As the Scotts explain in their Reply

> [t]he theory of liability with respect to the direct claim for negligent misrepresentation is thus: that *[Buckner] negligently represented to Silverhawk* and the bank that a liability policy was in place that would provide at least some coverage . . . [and] *the misrepresentation about the existence of a policy [] was communicated to the Scotts*[.]

Dkt. 111 at 1–2 (emphasis added)

The communication (or lack thereof) started with Buckner and Silverhawk and traveled from Silverhawk to the Scotts. But if Buckner was not liable to Silverhawk in the first instance, then the Scotts have not explained how Silverhawk's relay as an intermediate node could transform Buckner's

nonculpable conduct into conduct that could result in liability.  Nor does *Price-Orem* stand for such a proposition.

Nor does the fact that Buckner provided the evidence of insurance suffice by itself to establish liability.  Buckner, after all, did procure a CGL policy—just one the Scotts contend is inadequate.  But that inadequacy is not predicated on *objective* malfeasance.  Rather, this case is based on what the Scotts (through Silverhawk) subjectively understood the policy to have covered relative to what Silverhawk contends it requested—not what the Scotts independently understood about it based on Buckner's representations.  Dkt. 80-6 (Joel Scott: "Is your agent clear on what is needed?  Tom Hasleton: Yes, She just sent a copy.  We just received it from the agent.").

In sum, this case is about whether Buckner failed to provide adequate coverage *relative* to what Silverhawk alleges it requested, subjectively understood it was receiving, or should have known it needed based on prior dealings—not what Buckner needed to provide as an objective matter.  The Scotts, in turn, *relied on Silverhawk's* (unreasonable) *reliance* on Buckner.  The problem is not one of privity—like in *Price-Orem*—it is one of causality.  The Court's conclusion that no liability attached at the Buckner-to-Silverhawk link means the causal liability chain was broken.  And the Scotts did not identify any instance in which a third party's reliance on a second party's (improper) reliance somehow results in liability between the first and third party when none

attaches between the first and second.  This is what the Court meant by "pass through" liability in the context of negligent misrepresentation—not privity.[15]

As a result, the Court reaffirms its decision on the merits, given that, based on the facts present here, the Court's conclusion that no liability

---

[15]  Plus, the Scotts would need to establish that their reliance on the information relayed by Silverhawk was both reasonable *and foreseeable by Buckner*. It is less than clear that Buckner should have foreseen that the information would be communicated to the Scotts in a way that would cause them to directly rely on Buckner's professional knowledge and obligations for those statements, as opposed to relying on Silverhawk's professional obligations and knowledge.  So while *Price-Orem* supports the general principle that negligent misrepresentation claims are still viable absent privity, *Price-Orem* does not strongly support the Scotts' specific claim against Buckner.  That counsels against expanding liability to one industry solely based on its extension in another.

*Aclys International, LLC v. Equifax, Inc.* is instructive.  There, the district court concluded that Equifax did not owe a duty to *Aclys* because there was no direct relationship or foreseeability, and policy considerations weighed against imposing such a duty.  *See Aclys Int'l, LLC v. Equifax, Inc.*, No. 2:08-CV-00954, 2010 WL 1816248, at *4 (D. Utah May 5, 2010), *aff'd sub nom.*, *Aclys Int'l v. Equifax*, 438 F. App'x 689 (10th Cir. 2011).  The Tenth Circuit affirmed this decision, confirming that policy concerns control the extension of such duties in particular industries.  *Aclys Int'l v. Equifax*, 438 F. App'x 689, 692 (10th Cir. 2011).

Since third-party liability raises significant policy concerns, this Court remains reluctant to expand state law to impose duties on insurance agents merely because Utah has extended them to surveyors or real estate brokers — especially absent any Utah precedent doing so on these facts.  *See also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1295 (10th Cir. 2017) (discussing the general reluctance to expand state law without clear guidance from the state's highest court).  The Scotts have provided no compelling reasons for this Court to reconsider this ruling.

attached in the Buckner-Silverhawk context also means none could attach directly between Buckner and the Scotts.  The Court therefore declines to disturb its prior ruling on the negligent misrepresentation claim but clarifies that its determinations regarding the EIFS and subcontractor work exclusions were not necessary to the final judgment because the negligent misrepresentation claim fails independently as a matter of law due to the lack of an independent duty of care for insurance agents recognized under Utah law.  The Court also finds no intervening change in the controlling law, no new evidence previously unavailable, and no need to correct clear error or prevent manifest injustice.  Accordingly, the Court denies the Rule 59(e) motion with respect to the direct negligent misrepresentation claim.

## CONCLUSION

It is ORDERED that:

1.  The Defendant's Motion for Reconsideration, to the extent that it invokes Federal Rule of Civil Procedure 59(e), Dkt.101, is DENIED.

DATED: September 3, 2024.          BY THE COURT:

_____
Hon. Timothy M. Tymkovich